UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JOHN DOE NO. 143, by and through his )
parents and natural guardians, MOTHER )
DOE and FATHER DOE, and MOTHER )
DOE and FATHER DOE, individually, )
)
Plaintiffs, )
)
v. ) Case No. 2:16-cv-00206
)
HARTFORD SCHOOL DISTRICT, )
)
Defendant. )

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE THE REPORT AND TESTIMONY OF EXPERT WITNESS DR. FABIAN M. SALEH TO THE EXTENT HE RENDERS OPINIONS ON THE CREDIBILITY OR RELIABILITY OF THE STATEMENTS OF FACT WITNESSES**
(Doc. 74)

Plaintiff John Doe No. 143 ("Plaintiff John Doe"), by and through his parents and natural guardians, Mother Doe and Father Doe, and Mother Doe and Father Doe, as individuals (collectively, "Plaintiffs"), bring this action alleging negligence and loss of parental consortium against Defendant Hartford School District. Plaintiffs allege that another student "repeatedly sexually harassed" Plaintiff John Doe in Kindergarten at the Ottauquechee School in Quechee, Vermont and that this sexual harassment continued after Mother Doe and Father Doe reported it to Defendant's Superintendent and the school's principal, among others. (Doc. 1 at 1.)

Pending before the court is Plaintiffs' motion to strike the report and testimony of expert witness Dr. Fabian M. Saleh, M.D. to the extent he renders opinions on the credibility or reliability of the statements of fact witnesses. (Doc. 74.) Plaintiffs filed their motion on September 15, 2017. Defendant opposes the motion, filing a response on

September 29, 2017. Plaintiffs replied on October 25, 2017 and Defendant filed a sur-reply on October 27, 2017.

Arick W. Fudali, Esq., Jeff M. Herman, Esq., Jerome F. O'Neill, Esq., Navah C. Spero, Esq., and Stuart S. Mermelstein, Esq. represent Plaintiffs. Richard J. Windish, Esq. represents Defendant.

## I. Factual Background.

Defendant disclosed Dr. Saleh as a psychiatric expert pursuant to Fed. R. Civ. P. 26(a)(2). An assistant clinical professor of psychiatry at Harvard Medical School, Dr. Saleh is the director of the Sexual Violence Prevention and Risk Management Programs at Beth Israel Deaconess Medical Center in Boston, Massachusetts and was the founding director of the Sexual Behaviors Clinic in Worcester, Massachusetts. His work includes forensic and diagnostic assessments of sex offenders, as well as children and adolescents who are victims of sexual abuse.

For this case, Dr. Saleh performed a Fed. R. Civ. P. 35 examination of Plaintiff John Doe and produced a Forensic Evaluation ("the Expert Report") which Defendant provided to Plaintiffs on August 10, 2017. On the first page of the Expert Report, Dr. Saleh listed the questions Defendant's counsel asked him to consider, including: "1. Are the statements of the Plaintiff John Doe reliable in which he claims [fellow Kindergartener B.M.] touched him in an inappropriate and sexually abusive manner? (Please address the various allegations, including 'butt touching,' attempted penis touching, and alleged anal penetration)." (Doc. 82-2 at 1.)

In offering his opinion, Dr. Saleh stated:

> [I]f one were to take Plaintiff John Doe's self-report of "sexual abuse" at face value and consider the allegations in a sheer vacuum, somebody might conclude that Plaintiff John Doe did indeed [fall] victim to the advances of fellow Kindergartener B.M., resulting in repeated acts of sexual violence and digital anal penetration. In my professional opinion, however, this case not only begs for findings of fact, but also should not be analyzed in a vacuum. In fact, in view of the inconsistent and, at times, contradictory accounts, of Plaintiff John Doe and Kindergartner B.M., lack of reliable eye-witness accounts, and/or physical evidence, it is very difficult, if not impossible, to draw any meaningful conclusions as to the timeline and the

> nature of what actually happen[ed], if anything, between these two
> kindergarteners.

*Id.* at 9 (footnote omitted).

Dr. Saleh also addressed the possibility of manipulation of a child's account of suspected abuse and the unreliability that may result:

> With that in mind, it is also of utmost importance to remember, when
> analyzing what has already been disclosed and "confessed" to, that a child
> of Plaintiff John Doe's and Kindergartner B.M.'s age [is] susceptible to
> inaccurately reporting or misinterpreting events, yet not maliciously or
> deliberately. This is especially important to be considered in a case where
> "improper" and suggestive interview techniques have been used. For
> example, repetition of questions by a professional or a concern[ed] parent;
> leading questions; peer pressure; selective reinforcement; and manipulation
> of one's emotional tone to direct an interview can result in contaminated or
> even false disclosures and/or confessions. Along the same lines, it is
> important to remember that preconceived views about certain events (e.g.,
> what one prematurely may think took place between a child and an alleged
> perpetrator) can result in contamination and thus inaccurate and outright
> false disclosures. It is also important to consider the following facts when
> analyzing a child victim's disclosure and/or a child's confession:
> 1) children may present with a change in initial memory trace (e.g., through
> suggestion); 2) children may have difficulty distinguishing between actual
> and imagined events; and 3) children may have an impaired/deficient
> mastery of time. Lastly, it is important to be mindful of the fact that people
> involved in a child abuse case may for various conscious or subconscious
> reasons fake, embellish, minimize, or just withhold clinical or otherwise
> relevant information.

*Id.* at 9-10 (footnote omitted). Based on these concerns, Dr. Saleh could not "conclude – let alone to a reasonable degree of medical certainty – whether something of an inappropriate or violent nature happened between Plaintiff John Doe and Kindergartener" B.M. *Id.* at 10.

On September 27, 2017, Plaintiffs deposed Dr. Saleh who testified "[t]hat it's impossible to draw any conclusion even close to [Plaintiff John Doe's] statements being reliable. They have been inconsistent[.] . . . He was all over with regard to what may or may not have happened between him and [B.M]." (Doc. 93-4 at 3.) When questioned about how age affects reliability of testimony, Dr. Saleh opined:

3

[W]hat one has to consider when it comes to the reliability of those statements is, in children of that age, both for B.[M.] and for [Plaintiff John Doe], [is] contamination. And contamination means, again, as I tried to somewhat spell out in my report, things that may intervene, that may affect the reliability of what is stated. . . . [By repeating an alleged fact] I'm reinforcing in this child the belief that what I initially said did indeed happen. And what then sometimes happens is it may become part of their memory, it's part of their repertoire, so that they really then truly believe that [is] what happened. . . . And one important factor certainly is the age of the child that you're dealing with, or the cognitive development of the individual, because what I described to you, you may also see in people with intellectual disabilities who are older. So they are not five, six years of age, but they may be, say, 12, 13, 14 years of age, but because of their intellectual or cognitive deficits, you may suggest things to them and they may even acknowledge guilt. . . . Whereas the data would then suggest that this person didn't do it. I mean, those type of things one has to consider when it comes to statements made by people, and then specifically people who are vulnerable, be this for the age, be it for a cognitive disorder that they present with, or for other factors.

*Id.* at 13-15.

To support his conclusion that improper techniques were used in interviewing Plaintiff John Doe, Dr. Saleh testified as follows:

[F]or example, if you look at the e-mail from [Plaintiff John Doe]'s dad to Donna Kazanske, which was sent out on May 8th, 2013 at 8:51 p.m., it says "We kept asking if he actually touched him, and Plaintiff John Doe" -- I mean that's the way I had it in my report – "consistently told us that he did not. All the while, Plaintiff John Doe's speech remained perfect." I mean, if I read this, and this is certainly taken from this e-mail and there's context to the e-mail, but what it tells you is that they asked him not one time, more than once, and he consistently tells them, no, it didn't happen, or that he did not -- the touching -- actually touch John Doe. [John Doe] is saying no, and he is saying it not once but more than once. That's the way I read it. And so that's the one important point. Then, as you know, or may know, is that [the Department of Children and Family ("DCF")] . . . were looking for some aggravating circumstance. And the father asked about the penetrating, and John Doe[] . . . said no. Later on, though he suddenly says yes, that there was penetration. But the problem with this is that it's not a clean disclosure, but there is an interaction with the caregiver, the parent, people involved in [John Doe]'s life, not one time, numerous times over the course of a period of time, until [John Doe] tells the father what DCF needed to hear, seemingly I have to say, to suggest or to substantiate the

4

allegation, because you have now the penetration that [John Doe] is disclosing. I mean, that's what you have in this case, I mean, examples like this of people repeatedly asking [John Doe] questions about the same issue and [John Doe] giving one answer at some point in time, another answer at another time. And if you again, even look at his deposition, even within the very short period of the deposition, [John Doe] is giving different accounts of what he feels happened to him.

*Id.* at 19-21.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

"A district court's discretion to admit expert testimony is controlled by Rules 702, 703, and 403 of the Federal Rules of Evidence." *United States v. Dukagjini*, 326 F.3d 45, 51 (2d Cir. 2003). Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The district court functions as the gatekeeper for expert testimony, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). This task "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266. "The

5

party who presents an expert bears the burden of proving each element necessary to the admissibility of that expert's testimony and report." *Tucker v. Am. Int'l Grp. Inc.*, 179 F. Supp. 3d 224, 247 n.38 (D. Conn. 2016) (citing *Daubert*, 509 U.S. at 592).

Admissible testimony under Rule 702 may still be excluded under Federal Rule of Evidence 403, which authorizes the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) (stating that Rule 403 "authorizes exclusion of relevant evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'"). These dangers are particularly pronounced in the context of expert testimony, given the unique weight that the factfinder may place on such testimony. *See Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (internal quotation marks omitted).

### B. Whether Dr. Saleh Can Render an Expert Opinion on the Credibility or Reliability of Plaintiff John Doe's Statements.

Plaintiffs argue that Dr. Saleh's opinions on the reliability of Plaintiff John Doe's statements should be excluded. Defendant responds that Dr. Saleh can properly offer an expert opinion on the reliability of Plaintiff John Doe's statements without opining on his credibility.[1]

---

[1] As a preliminary matter, Defendant asserts that Plaintiffs' motion is "preemptive and premature" because Dr. Saleh's testimony has not yet been offered for the record. (Doc. 82 at 1.) The court nonetheless finds the motion ripe because Defendant states that it "has every expectation of calling Dr. Saleh as a witness at trial to present testimony consistent with his forensic evaluation[.]" *Id.*

6

"It is a well-recognized principle of our trial system that determining the weight and credibility of a witness's testimony belongs to the jury[.]" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks and alterations omitted); *see also United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) *rev'd in part on reh'g on other grounds*, 856 F.2d 5 (2d Cir. 1988) ("The credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.") (internal citation omitted). "[E]ven expert witnesses possessed of medical knowledge and skills that relate directly to credibility may not state an opinion as to whether another witness is credible, although such witnesses may be permitted to testify to relevant physical or mental conditions." *Id.* (internal citation omitted); *see also Gilson v. Sirmons*, 520 F.3d 1196, 1243 (10th Cir. 2008) ("Although [the expert] was formally trained in child development, nothing about her education or professional background necessarily qualified her to provide expert testimony on an issue normally reserved exclusively for the jury, i.e., witness credibility."); *Nimely*, 414 F.3d at 398 ("[T]his court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702.").

Expert testimony on a witness's credibility "usurps a critical function of the jury" and "is not helpful to the jury, which can make its own determination of credibility[.]" *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) (internal quotation marks omitted). Moreover, "the added aura of reliability that necessarily surrounds expert testimony" may unduly influence the jury's assessment of a fact witness's credibility. *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999).

In this case, Dr. Saleh opined that he could not "conclude – let alone to a reasonable degree of medical certainty – whether something inappropriate or violent happened between Plaintiff John Doe and Kindergartener" B.M. (Doc. 82-2 at 10.) He further stated that "it is very difficult, if not impossible, to draw any meaningful conclusions as to the timeline and the nature of what actually happen[ed], if anything,

7

between these two kindergarteners." *Id.* at 9. In reaching these conclusions, Dr. Saleh relied on the "inconsistent and, at times, contradictory accounts[] of Plaintiff John Doe and Kindergartener B.M., lack of reliable eye-witness accounts, and/or physical evidence[.]" *Id.*[2]

Opinions regarding the credibility of a witness are not helpful to the jury which is capable of evaluating and weighing eye-witness accounts or physical evidence without the aid of expert testimony. *See Stern v. Shammas*, 2015 WL 4530473, at *4 (E.D.N.Y. July 27, 2015) (excluding an expert opinion that a witness's testimony explaining his arrest "does not appear reasonable on the basis of these circumstances" because an expert "cannot make credibility determinations"); *see also United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("Determining the weight and credibility of witness testimony[] . . . has long been held to be the part of every case that belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge[.]") (internal quotation marks and alteration omitted). Although an expert may testify to relevant physical or mental conditions that affect credibility and to proper and improper interviewing tactics, an expert witness is not permitted to opine on a witness's credibility based on his or her assessment of inconsistencies. To do so would usurp the function of the jury. Whether cast as an opinion on the reliability or credibility of Plaintiff John

---

[2] Defendant asserts that Dr. Saleh addresses the *reliability* of Plaintiff John Doe's statements without opining on his credibility. This distinction, however, does not alter the analysis under Fed. R. Evid. 702. *See United States v. Rouse*, 111 F.3d 561, 571 (8th Cir. 1997) ("[A]ssessing the reliability *or* credibility of a victim's accusations is the exclusive function of the jury.") (emphasis supplied). In making this distinction, Defendant relies on *Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001), wherein the Second Circuit recognized "that the use of coercive or highly suggestive interrogation techniques can create a significant risk that the interrogation itself will distort the child's recollection of events, thereby undermining the reliability of the statements and subsequent testimony concerning such events[]" and "that expert testimony on these subjects is admissible[.]" *Schriver*, however, analyzed New York state law, not Fed. R. Evid. 702, to address the plaintiff's habeas corpus petition post-conviction in state court. Because New York does not follow the *Daubert* standard, *Schriver* is of limited applicability to the case at hand. *See Parker v. Mobil Oil Corp.*, 857 N.E.2d 1114, 1120 n.3 (N.Y. 2006) (noting that "*Frye* is the current standard in New York[,]" not the federal *Daubert* standard). In any event, Dr. Saleh may opine regarding proper and improper investigative techniques. What he may not do, however, is offer an opinion as to whether a witness is credible as a result.

8

Doe's account, Dr. Saleh's conclusions would improperly "attempt[] to substitute [his expert] judgment for" that of the jury. *Nimely*, 414 F.3d at 398 (internal quotation marks omitted). As a result, this portion of his expert witness opinion is inadmissible.

### C. Whether Dr. Saleh Can Testify to the Effect of Suggestive Interviewing Techniques on Child Witnesses.

In his Expert Report and deposition, Dr. Saleh addressed the effect of suggestive interviewing techniques on the memory of a child such as Plaintiff John Doe. Plaintiffs assert that Dr. Saleh "does not connect his general assertions about" the influence of suggestive interviewing techniques on a child's memory "with specific facts of record." (Doc. 74 at 9.)

Under Fed. R. Evid. 702(d), an expert must reliably apply the principles and methods to the facts of the case. *See Amorgianos*, 303 F.3d at 267 ("To warrant admissibility[] . . . it is critical that an expert's analysis be reliable at every step."). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.*

Because the effect of suggestive interviewing techniques on the reliability of a child's memory is beyond the knowledge of the average juror and could be of assistance in evaluating a child witness's testimony, expert testimony on this issue is generally permissible. *See Rouse*, 111 F.3d at 571-72 (finding the trial court's exclusion of an expert's opinions harmless error but approving of expert testimony on "the dangers of implanted memory and suggestive practices when interviewing or questioning child witnesses"); *see also People of Territory of Guam v. McGravey*, 14 F.3d 1344, 1348-49 (9th Cir. 1994) (stating, in dicta, that the defendant "could have, but did not, present expert testimony on the issue of sexual abuse of children or the susceptibility of children to suggestion."); *State v. Wigg*, 2005 VT 91, ¶ 17, 179 Vt. 65, 72, 889 A.2d 233, 239 (noting that "a large majority of [state] courts have held that the type of general expert evidence . . . explaining the proper and improper methods of examining children who

9

may be victims of sexual assault, is admissible"); *State v. Sargent,* 738 A.2d 351, 353 (N.H. 1999) ("[E]xpert testimony on the danger of false memory implantation from improper interview techniques may aid a jury in evaluating the reliability of a child's recollections."). This does not, however, mean that all of Dr. Saleh's opinions are admissible. General statements such as: "a child of Plaintiff John Doe's and Kindergartner B.M.'s age [is] susceptible to inaccurately reporting or misinterpreting events" (Doc. 82-2 at 9) and "it is important to be mindful that people involved in a child abuse case may for various conscious or unconscious reasons fake, embellish, minimize or just withhold clinical or otherwise relevant information[,]" *id.* at 10, are statements directed to matters which a jury is capable of understanding without an expert witness's assistance. *See* Fed. R. Evid. 702(a) (stating that an admissible expert opinion "will help the trier of fact to understand the evidence or to determine a fact in issue"); *see also United States v. Kime,* 99 F.3d 870, 884 (8th Cir. 1996) ("The advisory committee's notes [to Fed. R. Evid. 702] make it clear that when the layman juror would be able to make a common sense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous."); *United States v. Montas,* 41 F.3d 775, 784 (1st Cir. 1994) ("Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value."). While Dr. Saleh may opine regarding the interviewing techniques used by Plaintiff John Doe's family and DCF, he may not offer an opinion to the jury that children are generally unreliable witnesses or that people involved in child abuse cases have a motive to lie.

Even assuming *arguendo* that Dr. Saleh's generalized opinions could satisfy *Daubert* and its progeny, they should be excluded under Fed. R. Evid. 403. Expert testimony "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Nimely,* 414 F.3d at 397 (internal quotation marks omitted) (citing Fed. R. Evid. 403). Here, allowing Dr. Saleh to offer the opinions the court has excluded would be highly prejudicial and have the potential to confuse and mislead the jury as to the role of an expert witness, the limits of his or her knowledge, and interpose the risk that a jury would find such opinions

10

by a well-qualified expert such as Dr. Saleh conclusive. *See Nimely*, 414 F.3d at 397 (finding "an abuse of the district court's substantial discretion" to allow an expert to testify to the veracity of witnesses' accounts "even were it otherwise admissible" because such expert testimony was "prejudicial, confusing, and misleading to the jury[.]").

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion to strike the Expert Report and testimony of Dr. Saleh to the extent he renders opinions on the credibility or reliability of the statements of fact witnesses and offers opinions that children and people in child abuse cases have a propensity or motivation to lie. (Doc. 74.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of February, 2018.

Christina Reiss, District Judge
United States District Court